Steven T. Wax, OSB No. 85012
Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR  97204
Tel: (503) 326-2123
Fax: (503) 326-5524
Email: steve_wax@fd.org

Lawrence Matasar, OSB No. 74209
621 SW Morrison Street, Suite #1025
Portland, OR 97205
Tel: (503) 222-9830
Email: larry@pdxlaw.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CR 05-60008 HO |
| **Plaintiff,** | MOTION FOR CONTINUANCE AND STATEMENT REGARDING WITNESSES AND EXHIBITS |
| v. | |
| **PIROUZ SEDAGHATY,** | |
| **Defendant.** | |

Defendant Pirouz Sedaghaty, by and through his attorneys, Lawrence Matasar and Federal Public Defender Steven T. Wax, hereby moves this Court to continue the trial in this matter and the exchange date set for August 12, 2009.

Mr. Sedaghaty continues to work on reviewing discovery, conducting investigation, and trial preparation, but requires additional time to complete these tasks.

**Page 1 - MOTION FOR CONTINUANCE AND STATEMENT REGARDING WITNESSES AND EXHIBITS**

During the past weeks, Mr. Sedaghaty has made efforts to prepare for the exchange currently set for August 12, 2009. Those efforts have caused him to believe that he is in no position to provide the material that the Court has directed be made available. Mr. Sedaghaty has interviewed a significant number of potential witnesses to date; he believes that he has interviewed approximately half of the potential trial witnesses. Until he has made significantly more progress in the interviews, he is not in a position to provide a witness list. We do not know at this time which, if any, of the potential witnesses who have been interviewed will be called at trial.[1] While the defendant is not now in a position to provide a witness list and exhibit list, the defendant has provided the government with thousands of pages of documents, both in print and in electronic form, in response to a government subpoena and a search warrant.

With respect to accounting experts, Mr. Sedaghaty has been working with several. At this time, he does not have any expert reports, nor does he know which, if any, of the accounting experts he will call at trial. Mr. Sedaghaty has, in addition, been in contact with several Middle Eastern experts. Again, he does not have any written reports, nor does he know at this point whether he will call any at trial.

With respect to exhibits, the investigation and trial preparation have not yet progressed to the point where Mr. Sedaghaty has identified or made any exhibits. That work will be taking place over the coming months.

The remainder of this pleading explains the reasons why Mr. Sedaghaty believes

---

[1] Mr. Sedaghaty notes that in *United States v. Hicks*, 103 F.3d 837 (9th Cir. 1996), an order for the defense to provide a witness list significantly in advance of trial was held to be improper.

**Page 2 - MOTION FOR CONTINUANCE AND STATEMENT REGARDING WITNESSES AND EXHIBITS**

additional time is required in order for him to effectively prepare for trial.

### A.     The Defense Must Review Voluminous Electronic Information

The defense has not yet completed the review of the electronic information recovered from the hard drives seized by the government.  As the Court is aware, the defense has requested numerous times that the government provide it with copies of the recovered electronic information.  The government has continually refused to provide this information or its forensic reports, instead, providing images of the hard drives seized.  As a result, the defense was required to duplicate the efforts of the government.  The electronic information now accessible by the defense is arguably the same information that the government has had years to recover and review and has, thus far, refused to turn over to the defense.  The defense is reviewing this information in preparation for further investigation and trial.  The following paragraphs detail the defense diligence in this aspect of the case and the voluminous and important information that has just become available.

On May 16, 2008, the defense received a hard drive containing forensic images of ten hard drives seized by the government from Mr. Sedaghaty.  Eight of the ten forensic images contained errors or were in a format unreadable by the defense forensic expert. In late June 2008, a conference was held between the government case agent, the defense investigator, and the government and defense computer forensic examiners to resolve technical difficulties in accessing the government's hard drive collection.  On June 30, 2008, the defense expert reported that he was able to read 9 of the 10 images. Arrangements were made for the government to reproduce a second copy of the 10th image, which was received on September 7, 2008. Recovery of computer files commenced.

On October 15, 2008, Mr. Sedaghaty received from his expert an initial output of

**Page 3 - MOTION FOR CONTINUANCE AND STATEMENT REGARDING WITNESSES AND EXHIBITS**

recovered files and emails. The email recovery was incomplete, comprising a small percentage of the material eventually recovered. On January 5, 2009, Mr. Sedaghaty received a second set of recovered emails from his expert. However, on January 6, 2009, following an in-chambers scheduling conference, counsel conferred about the government recovery of email, and it became clear that defense recovery efforts of email evidence remained radically incomplete. The government offered to allow the defense to confer with the government computer expert to resolve recovery issues. Additional output was received from the defense expert on January 16, 2009. On February 26, 2009, the proposed conference was held, attended by attorneys for both parties, investigators from both parties, and the computer experts from both parties. On April 9, 2009, an additional telephone conference was held between the computer experts for both parties, the case agent, and a defense investigator, resulting in the transmission of a government computer report listing hard drive sectors at which the government had recovered email. It was received on April 17, 2009. Additional labor-intensive email recovery continued by the defense.

The defense finally received a significant quantity of recovered email from its expert on May 26, 2009. That batch consisted of more than 39 gigabytes of data comprising 244,000 individual files. In-house processing and review of this data was attempted from June 10, 2009, through June 25, 2009. This procedure determined that there were numerous duplicate files and that de-duplication and further forensic processing of the recovered files would be needed to allow for meaningful review. From June 30 to July 16, 2009, several vendors were consulted and pricing for additional processing was obtained. This further processing of the collection began on July 20, 2009, and occurred continuously

Page 4 - MOTION FOR CONTINUANCE AND STATEMENT REGARDING WITNESSES AND EXHIBITS

until July 31, 2009. The output was received on August 3, 2009, and consists of 41,000 individual pieces of email which, if printed, would fill approximately 16 bankers boxes. Review of the recovered and de-duplicated email is now in progress. To date, the defense has spent more than one year, significant staff time, and $10,000 in expert fees processing the hard drive data and attempting to reproduce the government's email and file recovery efforts in a manner that allows for meaningful review of the evidence. We have been diligent much of the time and expense could have been avoided if the government had produced hard copies of the material on the hard drives. Time is now needed to review the 41,000 recovered emails.

**B.   Accounting Experts Have Not Been Able To Complete Their Work Because They Did Not Have Access To Electronic Files or Accountant Wilcox's Full File**

The defense has been working with several potential experts in the accounting field since May 20, 2008. At that time, the defense had only received Accountant Wilcox's "working papers" as provided in government discovery. That information was provided to the experts when they were retained. However, in order to conduct complete analysis, the experts requested any Quickbooks files that might exist. The electronic Quickbooks files were necessary because the "working papers" revealed that Mr. Wilcox had been working with data recorded and manipulated in Quickbooks. It was necessary for the accounting experts to review the raw data. While the government may have been in possession of recovered Quickbooks files, it did not provide them to the defense. Mr. Sedaghaty was unable to recover any Quickbooks files from the hard drives mentioned above until October 31, 2008. Additional Quickbooks files were provided to defense experts on January 6, 2009, and on March 23, 2009.

**Page 5 - MOTION FOR CONTINUANCE AND STATEMENT REGARDING WITNESSES AND EXHIBITS**

In addition, the defense requested a meeting with Accountant Wilcox on March 3, 2009. Accountant Wilcox requested that the meeting be postponed until after the 2009 tax season. The defense met with Accountant Wilcox and Agent Colleen Anderson on May 22, 2009. At that time, the government was provided Accountant Wilcox's original file. The defense was provided a copy of that file on June 11, 2009. The defense met again with the accounting experts in June 2009, and were able to provide them additional requested information in July 2009. The accounting experts have not yet completed their review of the information and it is expected that it will take some time to do so.

### C.  Defense Witness Interviews Cannot Be Conducted Until The Electronic Review Is Concluded

The defense has identified many witnesses in this case. Several of these witnesses reside overseas. In order to properly interview these witnesses, the defense needs to review the written record of communication. As detailed above, until that review is concluded, overseas investigation would be ineffective and the cost would not be justified.

In addition, the defense must prepare to meet with the witnesses, which includes arranging for international travel. Right now, any such meeting must avoid Ramadan, which is from approximately August 22, 2009 through September 20, 2009. Therefore, the defense must plan to travel to meet with these witnesses after Ramadan has concluded. Once this investigation takes place, the defense will need to analyze the information and take the next steps in the defense of Mr. Sedaghaty. The government has already traveled overseas at least twice in furtherance of the prosecution of this case. The government has vast resources to conduct investigation overseas, including assistance from foreign intelligence services. The defense must be afforded adequate time to conduct its own investigation overseas.

**Page 6 - MOTION FOR CONTINUANCE AND STATEMENT REGARDING WITNESSES AND EXHIBITS**

**D.   The Government Has Yet To Provide All Discovery Ordered By The Court**

Mr. Sedaghaty has yet to receive all of the discovery, ordered and otherwise, from the government.  *See e.g.*, CR 53 (7, A14, A16, A17, A19, A20, A24, A28, B16, B17, B18, B19, B20, B21, B22, B23, B26), CR 90 (#s 31, 38, 39, 42, 43, 44, 46, 47, 55, 59, 60, 62, 66, 69, 70, 71), CR 171.  Without complete discovery, it is impossible to predict what investigation needs to be conducted, what exhibits or experts will be used, and what pretrial motions will need to be filed.

**E.   The Government Provided Significant New Discovery On July 13, April 14 And February 26, 2009**

The April 14 discovery material disclosed for the first time that the Government had conducted investigation activity in Russia (apparently during December 2008) when it was disclosed that a meeting had taken place between Messrs Gorder, Cardani and high level officials of the Russian FSB.  The Russian FSB is the Federal'naya Sluzhba Bezopasnosti (Federal Security Service) and successor organization to the KGB.  The April 14 material includes 178 pages of translations of documents and a number of foreign language video and audio recordings that the defense needs additional time to review.  More material from the FSB was provided in discovery on July 13, 2009.  Much of this material is time-consuming to evaluate because it involves the use of experts in foreign languages and an understanding of the operations of a foreign intelligence service.

Included in the July 13 discovery are some additional documents provided by the original donor of the money at issue in the case, Dr. El Fiki.  Some of the new El Fiki documents contain handwritten notations in Arabic that require additional review.  It is unclear why the new El Fiki material was unavailable until this time since the only El Fiki

Page 7 - MOTION FOR CONTINUANCE AND STATEMENT REGARDING WITNESSES AND EXHIBITS

interview the defense is aware of took place in 2005.

The February 26 discovery packet includes 116 pages of documents recovered from Al Haramain computers obtained during the search. The Government has alleged, in relation to some number of such files, that there was an effort to delete them from Al Haramain hard drives, but has not provided any forensic reports or other information regarding this allegation. Additional time is needed for defense experts to determine where each of these files resided on the Al Haramain hard drives and undertake the analysis necessary to determine when and how each file was deleted. The government has refused to share with the defense any forensic reports regarding allegations of file deletion, so this necessitates reconstructing all of the underlying forensic work.

The July 13 discovery expanded the scope of the case because it included the requested contents of the Wilcox computer and forensic report and a number of additional FBI reports of interviews of witnesses and an apparent consensual recording of a phone call with Mr. Seda. The work necessary to evaluate this discovery and retain the appropriate experts is in progress.

### F.     Overseas Investigation Involving Russia

The discovery received this spring included, on page 2288 in the government's bates stamp numbering system, a "witness interview report" that refers to "letters rogatory" sent by the United States to Russia. The discovery material provided from Russia opens up a number of avenues that may require investigation in that country and use by the defense of whatever tools are available to obtain information. That process, we understand, moves very slowly. Mr. Sedaghaty does not yet know whether it will be necessary to seek to utilize letters rogatory. He is working as rapidly as he can to make that determination.

**Page 8 - MOTION FOR CONTINUANCE AND STATEMENT REGARDING WITNESSES AND EXHIBITS**

**G.     Pending Motions May Determine The Need For Additional Time**

Several motions are pending with the Court. These include the Motion to Suppress that was filed on June 19, 2009 (CR 181, 182, 183), as well as the CIPA notices filed on July 9, 2009 (CR 195), and July 27, 2009 (CR 200). The CIPA notice filed on July 9, 2009 (CR 195), included another request to allow the defense to discuss the document that is currently secured with the Court Security Officer and is the subject of the Court's May 16, 2008, order prohibiting discussion among defense counsel and the defense team of defense evidence. CR 103. Resolution of these motions directly impacts the next steps in the preparation of the defense.

The defense respectfully requests a six month continuance of the trial date to Tuesday, June 1, 2010.

AUSA Chris Cardani has been contacted and opposes this request.

RESPECTFULLY SUBMITTED this 7th day of August, 2009.

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/Lawrence Matasar
Lawrence Matasar